**UNITED STATES of America, Appellee,**

v.

**Edward M. GILBERT,
Defendant-Appellant.**

**No. 398, Docket 81–1323.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1981.

Decided Dec. 11, 1981.

Rehearing and Rehearing In Banc
Denied Jan. 29, 1982.

Certiorari Denied April 26, 1982.
See 102 S.Ct. 2014.

---

Gerald L. Shargel, New York City and Alan M. Dershowitz, Cambridge, Mass. (Judd Burstein, New York City, Mark Fabiani, Jeffrey Leeds, Donna Levin, and Alex Makowski, Cambridge, Mass., on the brief), for defendant-appellant.

Jeffrey E. Livingston, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., Peter J. Romatowski, and Robert S. Litt, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before LUMBARD and NEWMAN, Circuit Judges, and ZAMPANO,* District Judge.

NEWMAN, Circuit Judge.

This is an appeal from a judgment of conviction entered on July 31, 1981 in the Southern District of New York (Charles S. Haight, Jr., Judge), following a jury verdict finding defendant Edward M. Gilbert guilty of conspiracy to manipulate securities trading in violation of 18 U.S.C. § 371 and of 33 substantive violations of the securities laws in violation of 15 U.S.C. §§ 78i(a)(1)(A), (B), and (C), 78i(a)(2), 78j(b), 78m(d), and 78ff, and Rule 10b–5 of the Securities and Exchange Commission. Gilbert argues primarily that the District Court should have granted his motion for a new trial pursuant to Fed.R.Crim.P. 33 on the ground of newly discovered evidence, or that the District Court should at least have granted him an evidentiary hearing on the question whether the Government improperly suppressed the new evidence during trial. We find appellant's arguments without merit and affirm the judgment of conviction.

The evidence, which included testimony of 21 witnesses and hundreds of documents, revealed a scheme engineered by Gilbert to manipulate the market price of shares of Conrac Corporation, a small electronics company. During the life of the scheme in 1975, Conrac shares tripled in price on the New York Stock Exchange. Gilbert manipulated the price increase through an elaborate series of wash sales and matched orders. Gilbert and his co-conspirators traded Conrac shares through more than 90 accounts at 19 different brokerage firms; more than 40 of the accounts were directly controlled by Gilbert. Trading volume increased from 2,000 shares a day to 40,000 shares per day, with Gilbert and his co-conspirators often accounting for more than 50% of the trading. The scheme produced profits of $750,000 for Gilbert and the accounts he controlled.

The basis for appellant's new trial motion originated on February 20, 1981 while summations were being made at his trial. An attorney, Henry Putzel, III, called Thomas J. Fitzpatrick, Chief of the Criminal Division of the United States Attorney's Office, and asked if he and another lawyer, Henry H. Korn, could meet with Fitzpatrick to discuss matters affecting their clients. On February 23 Putzel and Korn told Fitzpatrick that their clients, whom they did not identify, had information that a witness who had testified for the Government had engaged in possible defalcations in his business. The lawyers did not identify their clients, the witness, the witness's business, or the trial at which the witness had testified. According to an affidavit submitted by one of Gilbert's appellate counsel, Alan

* The Honorable Robert C. Zampano of the United States District Court for the District of Connecticut, sitting by designation.

M. Dershowitz, who spoke with Putzel after Gilbert's trial, Putzel and Korn decided that it would be in their clients' interest not to disclose the name of the witness until the end of the trial at which he had testified. They therefore told Fitzpatrick they preferred to wait a few days before detailing their information. Dershowitz makes no claim in his affidavit that the lawyers told Fitzpatrick on February 23 why they preferred not to supply any details at that time. On February 25, after the jury returned its verdict in Gilbert's trial, Korn called Fitzpatrick and identified the witness as James Couri, who had testified for the Government against Gilbert. The information concerned Couri's business, Plazagal International Corporation, an auction art gallery. As subsequently detailed in a letter that the Government furnished to Gilbert's co-defendants in advance of their trial, which had been severed from Gilbert's, Couri had falsified Plazagal's records, issued bad checks, and submitted false financial data to Plazagal's bank.

■ Gilbert contends that Judge Haight improperly denied his motion for a new trial after the information impeaching Couri became known. This Circuit's standard for granting Rule 33 motions is clear. Most pertinently, the new evidence must be such that it would probably lead to an acquittal. *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980); *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir. 1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). The motion is not favored, *ibid.*, and the strict standard for its approval does not, as appellant suggests, vary with its timing. Gilbert's motion clearly does not meet that standard. Couri's credibility had already been attacked at trial. Cross-examination had probed his plea agreement with the Government by which he had been permitted to plead guilty to one count of the charges relating to the Conrac manipulations. He was also shown to have submitted a false affidavit to a state court in unrelated civil litigation. The new evidence of his misdeeds concerning Plazagal was merely "*additional* evidence tending *further* to

impeach the credibility of a witness whose character had already been shown to be questionable," *United States v. Rosner*, 516 F.2d 269, 273–74 (2d Cir. 1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976) (emphasis in original); it could hardly have transformed the jury's image of Couri from paragon to knave. Moreover, contrary to appellant's assertion, his co-defendants' subsequent acquittal in a separate trial at which the new evidence was used to impeach Couri does not demonstrate the evidence's probable power to acquit Gilbert. In their separate trial, Gilbert's co-defendants cast themselves as pawns or dupes of Gilbert's scheme, and virtually the only evidence to contradict that characterization and implicate them in Gilbert's plan was Couri's testimony. By contrast, in Gilbert's trial there was ample independent evidence of his guilt, in the form of documents and other witnesses' testimony that either implicated Gilbert directly or corroborated Couri's testimony. As Judge Haight observed, "[T]he Gilbert jury could without difficulty have disbelieved Couri and nonetheless convicted Gilbert on the basis of evidence from other sources." Appellant's description of the two trials as a virtually perfect natural experiment in which the only variable was the new impeachment evidence seriously distorts the record. Indeed, Judge Haight granted the co-defendants a severance to avoid prejudicing them by the extensive evidence against Gilbert. *United States v. Gilbert*, 504 F.Supp. 565 (S.D.N.Y.1980).

■ Gilbert also alleges that the Government may have been told, should have known, or could have found out about the impeachment evidence before the end of his trial, and that Judge Haight should have conducted a hearing to look into such possibilities. Gilbert's claim of Government misconduct, however, is unsupported speculation. The allegations before the District Court were simply that prior to the end of Gilbert's trial, the Government had learned that an unidentified Government witness who had testified at an unidentified trial was subject to impeachment on unidentified

grounds. After communicating with the lawyer who supplied this "information" to the Government, Gilbert's appellate counsel alleged no facts to put in issue the Government's contention that it did not learn until the end of Gilbert's trial that the witness was Couri. The mere allegation of Government misconduct was wholly insufficient to require the District Court to hold an evidentiary hearing. Moreover, even though Gilbert presented the District Court with no facts to support the claim of Government suppression of favorable evidence, Judge Haight tested the Rule 33 motion by assuming "the worst" with respect to suppression of Couri's Plazagal activities. Correctly applying *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), Judge Haight ruled that failure to disclose the evidence, even if known, would be constitutionally significant only "if the omitted evidence creates a reasonable doubt that did not otherwise exist," *id.* at 112, 96 S.Ct. at 2401, since Gilbert had made only a general demand for exculpatory evidence. *United States v. Menghi*, 641 F.2d 72, 74–75 (2d Cir.), *cert. denied*, 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981); *Ostrer v. United States*, 577 F.2d 782, 786–87 (2d Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979). Because the evidence was only an additional part of a cumulative attack on a witness's credibility, the motion for a new trial was properly denied.

We find equally meritless Gilbert's contentions that Judge Haight improperly admitted into evidence an earlier SEC civil consent decree signed by Gilbert. The decree was clearly admissible under Fed.R. Evid. 404(b) to show that Gilbert knew of the SEC reporting requirements involved in the decree; the decree's prejudicial potential was not great, and Judge Haight properly cautioned the jury as to the limited inferences they could permissibly draw from it. Though we have previously recognized that a consent decree and a nolo contendere plea are somewhat analogous in that neither may be used to prove underlying facts of liability, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976), a nolo plea encounters the bar of Fed.R.Evid. 410, while a civil consent decree, as the settlement of a civil suit, is governed by Fed.R.Evid. 408. The latter rule bars evidence of a compromise to prove liability for the claim, but specifically permits use of such evidence for other purposes.[1]

Finally, Gilbert contends that Judge Haight improperly applied the standards of Fed.R.Evid. 609(b) in ruling that Gilbert's prior conviction for mail fraud would be admissible to impeach his credibility if he testified. Although more than 10 years had elapsed since Gilbert had been released from his jail term resulting from the prior conviction, it was admissible under Fed.R. Evid. 609(b) upon a determination by the trial judge that its probative value substantially outweighed its prejudicial effect. Judge Haight found that should Gilbert choose to testify, his credibility would be a crucial issue, that the impeachment value of a fraud conviction was high, that the two crimes were not so similar as to invite improper inferences, and that the age of the prior conviction and the defendant's subsequent history did not suggest that he had abandoned his earlier ways. Judge Haight considered the proper factors, and his finding, supported by specific facts and circumstances, was well within his discretion. *See United States v. Sims*, 588 F.2d 1145, 1149 (6th Cir. 1978); *United States v. Mahler*, 579 F.2d 730, 734, 736 (2d Cir.), *cert. denied*, 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978).

The judgment of conviction is affirmed.

---

1. We need not consider whether Fed.R.Evid. 410, which bars evidence of a plea of nolo contendere, would require exclusion of the charges faced by an accused when he pled nolo contendere, offered to prove knowledge of legal obligations.