UNITED STATES of America

v.

Michael O. MYERS, Angelo J. Errichetti,
Louis C. Johanson, and Howard L.
Criden, Defendants.

UNITED STATES of America

v.

Harrison A. WILLIAMS, Jr. and Alexan-
der Feinberg, Defendants.

Nos. CR 80–00249, CR 80–00575.

United States District Court,
E. D. New York.

March 24, 1982.

U. S. Dept. of Justice Organized Crime Strike Force by Thomas P. Puccio, Lawrence H. Sharf, Edward A. McDonald and

Gregory J. Wallance, Brooklyn, N. Y., for the U. S.

Neil E. Jokelson, Philadelphia, Pa., for defendant Myers.

Brown, Brown & Furst by Henry F. Furst, Newark, N. J., for defendant Errichetti.

John J. Duffy, Philadelphia, Pa., for defendant Johanson.

Ben-Veniste & Shernoff by Richard Ben-Veniste, Washington, D. C., for defendant Criden.

Jones, Day, Reavis & Pogue by Erwin N. Griswold and Claire Shapiro, Washington, D. C., Evans, Koelzer, Marriott, Osborne & Kreizman by George J. Koelzer and Joel N. Kreizman, Red Bank, N. J., for defendant Williams.

Bauer & Batchelder by Carol Prendergast, Susan D. Bauer and Harry C. Batchelder, Jr., New York City, for defendant Feinberg.

GEORGE C. PRATT, District Judge:

On grounds of newly discovered evidence, defendants in both of these cases move for a new trial pursuant to FRCrP 33. Alternatively, they move to reopen the evidentiary hearing on the "due process" issues that were disposed of as to the *Myers* defendants by this court's memorandum and order dated July 24, 1981, and as to the *Williams* defendants by memorandum and order dated December 21, 1981. In addition, defendant Williams reasserts his motion to suppress all of the tape recordings made by Melvin Weinberg. Familiarity with the prior proceedings and with this court's prior decisions in these matters is assumed.[1]

In connection with the motions the parties have submitted and the court has considered the affidavit of Harry C. Batchelder, Jr., Esq., sworn to February 2, 1982, and

---

1. The *Myers* case is now on appeal before the Second Circuit, awaiting oral argument. The pending appeal precludes this court from granting a new trial motion. This court is empowered, however, to hear the motion and either deny it or, if it determines that it should be granted, to certify that fact to the appellate court so that the case may be remanded for appropriate action. FRCrP 33. Defendants Williams and Feinberg made the new trial motion before filing a notice of appeal. Over their motions the court has full jurisdiction, and their time to appeal is extended to 10 days after this memorandum and order. FRAP 41(b).

attached exhibits; the affidavit of Cynthia Marie Weinberg, sworn to January 16, 1982; the affidavit of Indy Badhwar, sworn to January 18, 1982; the affidavit of Richard Ben-Veniste, Esq., sworn to February 25, 1982, with annexed exhibits; the transcript of portions of telephone interviews by Indy Badhwar of Marie Cynthia Weinberg; and the opposing affidavits of the following special agents of the Federal Bureau of Investigation, all sworn to February 22, 1982: John Good, Anthony Amoroso, Gunnar A. Askeland, John M. McCarthy, Thomas M. McShane, and Carol A. Kaczmarek, together with the affidavit of special agent William L. Deaton, sworn to March 22, 1982. In addition, the court has reviewed and considered the memorandum of law submitted on behalf of the *Myers* defendants, the memorandum submitted on behalf of defendant Feinberg, the three memoranda submitted on behalf of defendant Williams, and the government's two memoranda in opposition to the motions.

The newly discovered evidence claimed by defendants to require reopening of these proceedings comes from Cynthia Marie Weinberg, who at the relevant times was the wife of Melvin Weinberg. As appears from the moving papers, Mrs. Weinberg was approached by Indy Badhwar, an associate of a newspaper columnist. Badhwar spoke to her on several occasions both over the telephone and in personal interviews. He recorded some of his telephone conversations with her, and transcripts of portions of those recorded conversations are submitted with the motion papers. Mrs. Weinberg also executed an affidavit sworn to January 16, 1982 that was prepared for the District Court for the District of Columbia in connection with *U. S. A. v. Richard Kelly et al.*, another Abscam case. Ten days after Mrs. Weinberg supplied her affidavit in the Washington, D. C. proceeding, she committed suicide, leaving a note which is attached to the Ben-Veniste affidavit as Exhibit D.

In general terms, defendants argue that Mrs. Weinberg's statements in the transcripts and affidavit tend to establish five points: (1) that Melvin Weinberg lied at the *Myers* trial when on cross-examination he denied having received gifts from defendant Angelo Errichetti of television sets, a video cassette recorder, a stereo set and a microwave oven; (2) that government agents knew that Weinberg lied at the *Myers* trial about the gifts and did nothing about it; (3) that the reliability of the audio tape recordings done by Weinberg is now substantially undermined; (4) that Weinberg sold or gave various items of personal property to FBI agents; and (5) that during the course of the investigation, Weinberg "covered" for certain FBI agents when they were engaged in amorous activities.

## MOTION FOR A NEW TRIAL

The primary ground for all defendants' motions is the newly discovered evidence supplied by Mrs. Weinberg with respect to possible gifts by defendant Errichetti to Weinberg.[2] Defendants argue that this evidence tends to establish that Weinberg lied at the trial when he denied receiving such gifts, and that the prosecutor and certain FBI agents lied at the due process hearing when they denied knowledge of the gifts.

As Judge Newman stated in *U. S. A. v. Gilbert*, 668 F.2d 94 (CA2 1981):

> This Circuit's standard for granting Rule 33 motions [for a new trial on grounds of newly discovered evidence] is clear. Most pertinently, the new evidence must be such that it would probably lead to an acquittal. * * * The motion is not favored * * *. At 96.

▇▇▇ Such motions are viewed with great caution. *U. S. A. v. Lombardozzi*, 343 F.2d 127 (CA2 1965); *U. S. A. v. Costello*,

**2.** Defendants' claims of misconduct by the agents in receiving gifts or engaging in financial transactions with Weinberg and by engaging in on-duty sexual activities together with Weinberg's covering-up such conduct provides no basis for granting the motions before the court. The issue to be determined is whether defendants received a fair trial, and whether their constitutional rights were infringed. Whatever improper conduct the agents may have engaged in with Weinberg or others may be the subject of inquiry elsewhere, but has not been shown to affect the rights of any of the defendants.

255 F.2d 876, 884 (CA2), *cert. denied*, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958). To require a new trial the newly discovered evidence must be material, not merely cumulative, and must be of such a nature that it would probably produce an acquittal. *U. S. A. v. Mentesana*, 305 F.2d 214 (CA2 1962); *U. S. A. v. Soblen*, 301 F.2d 236, 241–42 (CA2 1962). Newly discovered evidence that merely goes to impeach the credibility of a prosecution witness is ordinarily not sufficient to justify a new trial, *Mesarosh v. U. S.*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), particularly when the newly discovered evidence would be "only an additional part of a cumulative attack on a witness' credibility". *U. S. A. v. Gilbert, supra* at p. 97.

█ As applied to defendants Williams and Feinberg, the evidence with respect to possible gifts to Weinberg is unrelated to any issue before the jury at the trial. Since there was no testimony about gifts in that case, whether or not the gifts were actually made could not affect the verdicts against them.

█ In *Myers*, on the other hand, there was considerable evidence on the subject of gifts by Errichetti to Weinberg, and defendants argue that the newly discovered evidence from Mrs. Weinberg is significant because it could affect the credibility of her husband at the trial, an issue that defendants claim to have been vital.

To understand the proper context of Weinberg's credibility, it is necessary to review briefly the circumstances of the *Myers* trial. Myers was recorded on videotape crudely accepting $50,000 from undercover agent Anthony Amoroso, and promising to lend his assistance as a United States Congressman to Amoroso's "employer", a fictitious Arab sheik, in his efforts to immigrate to this country.

Caught so blatantly red-handed, Myers had little with which to defend himself on the factual issues at trial. Myers' defense was that he was only "play acting", that he never intended to help the sheik, that he was in fact only swindling the sheik out of the money, and that he had been told by defendant Errichetti before the meeting with undercover agent Amoroso that his promises had no meaning and that he would never be called upon to do anything. Myers testified that Errichetti had told him that Weinberg had told Errichetti that Myers' promises to the "sheik's" representative would mean nothing.

At trial, Weinberg denied having had such a conversation with Errichetti, and it is upon this denial that defendants focus the issue of Weinberg's credibility. From defendants' point of view, therefore, if the jury could have learned that Weinberg in fact had received gifts from Errichetti after having denied that on his cross-examination, they might have evaluated his credibility differently and then in turn might have believed Myers' "play acting" explanation.[3]

The argument is tenuous at best. Arrayed against these speculations about the possible effect upon jurors' minds of additional evidence about gifts, are the following circumstances: (1) Weinberg's credibility was skillfully and devastatingly attacked during the trial; (2) in his summation to the jury the prosecutor urged the jury not to base a decision upon Weinberg's testimony, but instead to evaluate the credibility of Myers by comparing his testimony on the witness stand with his conduct on the videotape when he received the money; (3) any semblance of plausibility about Myers' "play acting" explanation was substantially undercut by Myers' later appearance before the hidden video cameras in Philadelphia with other agents of the sheik, in the absence of Errichetti, and his agreement to accept still more money in return for the same use of his congressional office improperly.

---

**3.** At trial, the government urged that Myers' "play acting" defense was legally insufficient. The court understands that this argument is being repeated on the pending appeal. If the government is correct in that contention, then the entire issue of gifts to Weinberg which is advanced by defendant only in connection with Weinberg's credibility, would disappear from the case.

In short, Myers' conviction rests almost entirely upon his own performance on videotape. The newly discovered evidence not only would be simply an additional part of a cumulative attack on Weinberg's credibility, but the single point on which his credibility is conceivably relevant to the issues of guilt and innocence is so heavily outweighed by Myers' own on-camera conduct that the additional evidence would not inject reasonable doubt into what was otherwise an overwhelming case against the defendants. Accordingly, the motion of all defendants for a new trial on grounds of newly discovered evidence is denied.

## MOTIONS TO REOPEN DUE PROCESS HEARINGS

In seeking to reopen the due process hearings, defendants go one step beyond the new trial issue by claiming that the government agents and the prosecutor knew at the time of trial that Weinberg lied about the gifts. In opposition to the motions the government has submitted several affidavits of the accused agents. They deny having had knowledge of Weinberg's ownership of the electronic equipment in question. While they could have observed that equipment when they were at Weinberg's home, they point out that they had no particular reason to note the equipment since it was not of any particular significance during the course of the investigation.

Since Mrs. Weinberg is now dead, there is no opportunity to cross-examine her about her sometimes vague, sometimes speculative statements, some of which appear to be clearly inaccurate. The evidence now before the court, when viewed in light of the issues relating to the defendants' guilt or innocence in these cases, does not warrant a further due process hearing at which the prosecutor and the FBI agents would simply reassert their ignorance about the gifts at the time of Weinberg's testimony.

■ The law does not automatically require a hearing for every claim that a prosecutor may have let pass a false statement by a witness. Some degree of materiality, some likelihood of the falsity affecting the result must be shown. Indeed, even where it is clear that the government permitted false testimony to be given, a new trial will not be required unless there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *U. S. A. v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ Here, even assuming that Weinberg's denial of receiving gifts from Errichetti was false, and further assuming that one or more of the agents had seen and noticed the items in Weinberg's home, nevertheless, in light of the powerful evidence of Myers' guilt, there is no likelihood that the additional facts would produce a different verdict. Much less, therefore, is a further evidentiary hearing required to determine whether Mrs. Weinberg's conclusions about the agents' states of mind are correct, as opposed to the agents' sworn denials of such knowledge.

Even if defendants' view of the circumstances were assumed to be correct, the result sought, a new trial, would be unwarranted. Accordingly, the motions to reopen the due process hearings for the purpose of inquiring further into the knowledge of the FBI agents about gifts from Errichetti to Weinberg are denied.

## DEFENDANT WILLIAMS' MOTION TO SUPPRESS TAPES

■ Defendant Williams asserts that the court never ruled on that aspect of his pretrial motion that sought to suppress the Weinberg tapes on the ground of their inherent unreliability. Alternatively, Williams argues that new evidence from Mrs. Weinberg adds to the picture of unreliability in a way that requires retrospective rejection of the Weinberg tapes. To the extent that defendant Williams did not assert or make clear his position prior to the court's ruling at trial that the tapes were admissible, the objection is waived. FRCrP 12(f). Viewed in the light of the new evidence supplied by Mrs. Weinberg's affidavit and transcripted conversations with Badh-

war, the renewed motion to suppress is denied.

The new evidence, if assumed to be true, would merely confirm what had already been apparent, namely, that Weinberg made tape recordings of his many telephone conversations with various people subject to the Abscam investigation; that many, if not most of the recordings were made in the absence of any direct FBI supervision; that he collected the tapes and periodically turned groups of them over to the FBI for processing; that some of the tapes began in mid-conversation; and that some of them were not complete.

Weinberg was cross-examined extensively about omissions, gaps, and possible tampering with the tapes. The particular new evidence from Mrs. Weinberg relates to a group of 44 tapes which she claims were picked-up by FBI agent Gunnar Askeland. Even by her own version, the agents did get the tapes into their custody despite some initial confusion as to their whereabouts. The added information, if assumed to be true, and even if present in advance of trial, would not have supplied a basis for suppressing those Weinberg tapes that were used at trial. Accordingly, defendant Williams' motion to suppress the tapes is denied.

### SUMMARY

Defendants' motions for new trials are denied; their motions to reopen the due process hearings are denied; and defendant Williams' motion to suppress the Weinberg tapes is denied.[4]

SO ORDERED.

---

4. In view of this disposition it is unnecessary to consider whether extrinsic evidence of the gifts would' be admissible at a new trial in light of FRE 608(b). It is also unnecessary to consider the admissibility of the deceased Mrs. Weinberg's affidavit, the incomplete transcripts of her conversations with Badhwar, the tapes of those and perhaps other conversations with Badhwar, any notes and records of Badhwar made in connection with his news-gathering efforts, and Badhwar's own testimony about his conversations with Mrs. Weinberg and perhaps others in connection with these matters.