UNITED STATES of America

v.

Juan MORALES, Defendant.

No. 86 Cr. 1049 (EW).

United States District Court, S.D. New York.

May 27, 1987.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for U.S.; Joan McPhee, Asst. U.S. Atty., of counsel.

Thomas F. Liotti, Carle Place, N.Y., for defendant.

EDWARD WEINFELD, District Judge.

Defendant, Juan Morales, was convicted after a two day jury trial of conspiracy to violate the federal narcotics laws and three counts of distribution and possession with intent to distribute cocaine. Joseph Beckles, who was a co-defendant of Morales and had previously pled guilty to the conspiracy count of the indictment, testified at trial as

a government witness pursuant to a cooperation agreement.

Pending Morales' sentencing, and less than three weeks after the trial, the Assistant United States Attorney who had prosecuted the case against Morales advised defense counsel and the Court by a letter dated April 6, 1987 that she had received a telephone call on April 2, 1987 from an Internal Revenue Agent who informed her that he was the case agent handling a tax investigation of an individual by the name of Joseph Beckles, and that he, the agent, had been contacted by a probation officer who, in the course of preparing the pre-sentence report on Beckles, had learned that one Joseph Beckles was under investigation by the IRS. Based upon this conversation with the IRS agent, and a subsequent review of his investigative report, the Assistant concluded that the Joseph Beckles who was the subject of the IRS investigation was the same Joseph Beckles who testified against Morales. She then recalled that another Assistant United States Attorney, substantially prior to the date that the plea agreement was entered into with Beckles, had mentioned that he had a tax investigation involving an individual by the name of Joseph Beckles. At the time of her conversation with her fellow assistant she drew no connection between the Beckles who was the subject of a tax investigation and the pending prosecution of Joseph Beckles for federal narcotics and conspiracy laws in this case. She further advised defense counsel that it was not until she received the telephone call from the IRS agent, that she recalled her conversation with the Assistant in charge of the Beckles tax inquiry. The tax investigation centered about information that Beckles had submitted false federal W–2 forms to the Internal Revenue Service and used his brother's Social Security number and two variations of his own name and Social Security number in order to obtain income tax refunds to which he was not entitled.

Upon receipt of the information from the Assistant United States Attorney, defense counsel moved pursuant to Rule 33 of the Federal Rules of Criminal Procedure to vacate the judgment of conviction and for a new trial. Defense counsel contends that the information which the Government failed to disclose prior to, or during trial, would have been useful to the defense for the purpose of further impeaching the credibility of Beckles when he testified at trial, and that use of this information would have resulted in a either a hung jury or an acquittal.

### Discussion

At the outset it is noted that the Assistant's statement that the failure to advise the defense of the pending investigation of the Beckles' alleged tax fraud was inadvertent and an oversight is not challenged. No contention is made that this information was withheld intentionally or that the prosecution knowingly used perjured testimony, and therefore a new trial is warranted only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [1] A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." [2]

There is no doubt that if the defendant had access to this newly disclosed information concerning Beckles at the time of trial, defense counsel would have used such information in further cross examination of him. However, it cannot be said that the additional information concerning Beckles' character and credibility creates a reasonable probability that, had it been disclosed to the defense prior to trial or during the trial, the jury's verdict would have been different.

This is the classic case in which the material at issue is merely "additional evidence tending *further* to impeach the credibility of a witness whose character had already

---

1. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). *See also United States v. Serna,* 799 F.2d 842, 848 (2d Cir.1986).

2. *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3384.

been shown to be questionable."[3] The evidence concerning a pending tax investigation of Beckles is in no way exculpatory of the defendant Juan Morales, and there is no doubt that Beckles' credibility had already been called into question. The defense cross-examined Beckles extensively concerning: (1) his plea of guilty to the conspiracy count contained in the indictment; (2) his signing of a cooperation agreement with the Government which permitted him to plead guilty only to the conspiracy count of the indictment;[4] (3) his conviction for making false statements on a job application;[5] (4) his false statement to Agent Dunlap about being a probation officer; and (5) his history of cocaine abuse. The vigorous cross examination of Beckles had already shown his credibility to be questionable, and thus "[t]he sole issue before [this Court] is whether *additional* evidence tending *further* to impeach the credibility of a witness whose character had already been shown to be questionable ... might have induced a juror who had no reasonable doubt of [the defendant's] guilt, to have such doubt."[6]

Given the strength of the Government's case, independently of Beckles' testimony, it is evident that no reasonable probability exists that such cumulative evidence, which would have been used only further to impeach Beckles' credibility and not his direct testimony, would have induced a juror who had no reasonable doubt of the defendant's guilt to have such a doubt.

While Beckles was the only person to testify as an eye witness to Morales' direct "hand-to-hand" sale of drugs, there was other substantial evidence presented at trial sufficient to sustain the charges against him beyond a reasonable doubt. Moreover, much of this independent evidence corrobo-

rated Beckles' testimony. The fact that some of this evidence is circumstantial in nature makes it no less sufficient. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."[7]

Agent Dunlap testified to his contact with Morales, including the agreements made by Morales to sell him drugs. Dunlap also testified that Beckles and Morales entered Morales' apartment building shortly after the agreements were made and that Beckles then returned with the amount of drugs agreed upon. Further, surveillance photographs of Morales and Beckles in front of Morales' apartment were introduced into evidence, and the Government also introduced into evidence tape-recorded conversations between Beckles and Dunlap which corroborated Beckles' testimony concerning the fact that Morales had sold Agent Dunlap cocaine using Beckles as an intermediary. Moreover, Agent Rij's testimony concerning the layout of Morales' apartment and the locks on his bedroom door corroborated Beckles' testimony. Agent Bowe also testified that during the time federal agents were executing a warrant for Morales' arrest, he observed Morales throw a bag out of his bedroom window in an attempt to dispose of the 44 vials of cocaine that were subsequently found to be contained in the bag. Further, Agent Rij testified that at the time Morales was arrested the only people in the apartment were Morales and the Drug Enforcement Agents, and that there was no other way to gain entrance to or leave Morales' bedroom other than through the padlocked door or the window. In addition, a strainer with cocaine residue, which was recovered from Morales' bedroom, was introduced into evidence, and Beckles' testi-

**3.** *United States v. Rosner,* 516 F.2d 269, 273–74 (2d Cir.1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). *See also United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982).

**4.** *Cf. United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982).

**5.** *Id.*

**6.** *United States v. Rosner,* 516 F.2d 269, 273–74 (2d Cir.1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976).

**7.** *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S.Ct. 6, 10, 5 L.Ed.2d 20 (1960) (citing *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 508 n. 17, 77 S.Ct. 443, 449 n. 17, 1 L.Ed.2d 493 (1957)).

mony concerning the manner in which the vials of cocaine he obtained from Morales were packaged was corroborated by the physical evidence submitted at trial.

It is further noted that there is no evidence that Beckles was aware that he was being investigated by the Government for tax fraud at the time he testified at trial, and even if he did know of such an investigation, it is questionable that such information would have been received in evidence. Moreover, had the defense questioned Beckles about his alleged tax activities, and had he denied any wrongful conduct, the defense would have been precluded from attempting to refute his answer through the production of extrinsic evidence or by calling other witnesses.[8]

In conclusion, in the light of (1) the corroboration of Beckles' testimony through other evidence in the case and the merely cumulative impeachment value of the information that was not disclosed to the defense; and (2) the independent strength of the Government's case against Morales, even excluding Beckles' testimony, a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is not warranted. "[T]he perspective of the living trial is lost in the search for error in a dead record."[9] This Court, having presided over the trial, listened to the evidence presented in the case, observed the demeanor of the witnesses who testified, and heard the arguments urged upon the jury by counsel for the Government and the defense, is satisfied to a moral certainty that there is no reasonable probability that the information at issue here would have permitted the defendant to present his case so as to have caused the jury to reach a different result.

Defendant's motion for a new trial is denied.

So Ordered.

---

8. See Fed.R.Evid. 608(b). See also Lewis v. Baker, 526 F.2d 470, 475 (2d Cir.1975); Walker v. Firestone Tire & Rubber Co., 412 F.2d 60, 63 (2d Cir.1969).

   At oral argument defense counsel mentioned the fact that Beckles tested positively for cocaine on March 19, 1987. This test occurred subsequent to the conclusion of the trial and thus it would not have been possible for the results of this test to have been used at the trial. Moreover, the fact that Beckles tested positively for cocaine on March 19, 1987 does not demonstrate that he necessarily perjured himself when he testified, on March 17, 1987, that he had not used cocaine for more than a year.

   Defense counsel also raised at oral argument the fact that Beckles' presentence report indicates that he perjured himself when he testified at trial as to the college from which he had graduated. Again, this information was acquired by the prosecution after trial, through the preparation of the probation report, and could not have been used by the parties at the trial itself. In addition, the fact that Beckles may have perjured himself with regard to the college from which he graduated is merely cumulative impeachment evidence and, for the reasons discussed above with regard to the information concerning the pending tax investigation of Beckles, it does not warrant a new trial.

9. Glasser v. United States, 315 U.S. 60, 88, 62 S.Ct. 457, 473, 86 L.Ed. 680 (1942) (Frankfurter, J. concurring).