**UNITED STATES of America**

v.

**Eugene Robert WALLACH, Rusty Kent London, and Wayne Franklin Chinn, Defendants.**

**No. S 87 Cr. 985 (RO).**

United States District Court,
S.D. New York.

April 4, 1990.

As Amended April 12, 1990.

Otto G. Obermaier, U.S. Atty. for S.D. N.Y., for the U.S.; Baruch Weiss, of counsel.

Dennis Riordan, Riordan & Rosenthal, San Francisco, Cal., for defendant, Eugene Robert Wallach.

Michael E. Tigar, Austin, Tex., for defendant, Rusty Kent London.

Cristine Arguedas, Cooper Arguedas & Cassman, Emeryville, Cal., for defendant, Wayne Franklin Chinn.

### OPINION AND ORDER

OWEN, District Judge:

After a four month trial ending in August, 1989, the jury found defendants Eugene Robert Wallach, Rusty Kent London, and Wayne Franklin Chinn guilty of an array of massive frauds arising out of their association with the Wedtech Corporation, the now-defunct Bronx military contractor. Wallach, long-time friend and some time counsel to former Attorney General Edwin Meese III, had, the jury found, received $125,000 and $300,000 payments from Wedtech pursuant to false invoices he submitted that disguised the true nature of Wallach's work: lobbying Meese and other federal officials on behalf of Wedtech, with the $300,000 being a prepayment for future lobbying services to be performed after Wallach, as he expected, became a high-level Department of Justice official on an appointment from Meese. Wallach's invoices attributed the said almost half million dollars in fees to alleged work in connection with a public offering of Wedtech stock

and the acquisition of a shipyard in Michigan, when in fact Wallach did little if any work on either of these projects. Similarly, the jury found that London had submitted false invoices to Wedtech to disguise the true nature of his work: stock manipulation and funneling secret payments to Chinn. The jury further found that Chinn, a member of the Wedtech board of directors, improperly shared in the funds Wedtech had disbursed to London, and had charged substantial personal expenses to his Wedtech credit cards, a fraud on Wedtech and the Internal Revenue Service.

Through these fraudulent practices, the jury found that each of the defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), that London and Chinn had conspired to commit these violations, and that each defendant committed corresponding substantive violations of the law. On October 16, 1989, defendant Wallach was sentenced to a term of imprisonment of six years, defendant London to five years, and defendant Chinn to three years, with forfeitures of the illegal gains to follow.

Before me is a motion by the defendants for a new trial because of the post-trial disclosure by the government[1] that Anthony Guariglia, a major government witness at trial, breached his plea agreement with the government[2] by gambling in Puerto Rico in November, 1988 and thereafter perjured himself at the trial by denying any such gambling.[3] The defendants' appeals of their convictions being before the Second Circuit at the time of these disclosures, that Court remanded the case for proceedings appropriate for the resolution of the motions.

■ Whether subsequent discovery of perjury necessitates a new trial depends on the materiality of the perjury to the jury's verdict, and on the culpability, if any, of the government in its use. The more culpable the government, the less the defendant must show material impact on the jury. For instance, if the government *knowingly* introduces perjured testimony, then a grant of a new trial motion is "virtually automatic," that is, *any probability* that the perjured testimony might have influenced the jury's verdict will require a new trial. *U.S. v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975); *see Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir.1988), *on remand*, 1989 WL 97844, 1989 U.S.Dist.Lexis 9534 (S.D.N.Y. August 15, 1989).

■ However, if the government is unaware of perjured testimony at trial, then a new trial is required only if the new evidence goes to an issue that is "so material that it would 'probably' cause a result of acquittal upon retrial." *Sanders v. Sullivan*, 863 F.2d at 225 (citations omitted). Perjured testimony will meet this "extraordinary" standard only if it "leave[s] the court with the firm belief that but for the perjured testimony, the defendant would most likely not have been convicted," or if "'its suppression undermines confidence in the outcome of the trial.'" *Sanders v. Sullivan*, 863 F.2d at 226 (citing *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)).

**1.** According to the affidavit of Assistant United States Attorney Baruch Weiss, which is not seriously put in issue, the government disclosed the alleged misconduct after receiving an unsolicited telephone call from one Ira Cohen, who reported that he had observed Guariglia's Puerto Rico gambling in 1988, prior to trial, and had been told by Guariglia of profit skimming in Guariglia's stationery supply business.

**2.** A Bankruptcy Court order had prohibited Guariglia's gambling, and the plea agreement incorporated the terms of all outstanding court orders against Guariglia.

**3.** The government also disclosed how, according to Ira Cohen, *see* n. 1, *supra*, when Cohen was considering investing in Guariglia's business in 1988, Guariglia told Cohen that he was skimming profits and that one could skim profits, thus making the investment more attractive. Guariglia did not effectively dispute this when confronted with it by the government. Consequently, treating the statement as having been made, if it was true, it was a fraud on the Internal Revenue Service, if not, a false statement to and attempted fraud against a prospective investor. The defendants do not heavily base their motions on this piece of new evidence, but, even if they did, as mere additional impeachment material, this evidence could not possibly be considered material, or likely to influence the jury's verdict.

However, where the subsequently discovered perjury concerns the witness's credibility alone, including the witness's compliance with a plea agreement, and the perjury is merely *"additional* evidence tending to *further* impeach the credibility of a witness whose character has already been shown to be questionable," then it is unlikely that the jury would have acquitted on this basis. *United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981).

█ There is in this case neither allegation nor evidence that the prosecution had any knowledge as to Guariglia's now-disclosed perjury, so that a hearing on this issue is unnecessary. The defendants have not contradicted with anything but "unsupported speculation" Assistant United States Attorney Baruch Weiss' account of the government's post-trial discovery of the perjury. Upon its discovery of the perjury, the government came forward to disclose what it had learned, and is proceeding against Guariglia. When, during the trial, the defendants cross-examined Guariglia about evidence that he had improperly gambled in Atlantic City, the government independently and thoroughly interviewed Guariglia's companions on that foray and were given confirmation of Guariglia's explanation that he had merely taken out "markers" for others.[4] The defendants' argument, also made to the jury at the trial, that Guariglia's explanation for apparent continued gambling was incredible, is insufficient to raise an issue of fact as to the government's knowledge of Guariglia's perjury. Without such a fact issue, no hearing is required. *United States v. Gilbert,* 668 F.2d at 96.

In the absence of any disputed issue of fact, it remains only to determine as a matter of law whether the concededly perjured testimony was so material that the jury probably would have acquitted the defendants had it known that Guariglia lied about his continued gambling or about his profit skimming. I have not the slightest question that this additional brace of wrongdoings, if known to the jury, would not in any way have had the slightest effect upon its verdict. The testimony was not material: Guariglia's gambling and skimming did not bear on the defendants' guilt or innocence, only on Guariglia's credibility. And here, these instances of falsehood would have been merely minor, cumulative additions to the massive mound of discredit heaped upon Guariglia over several days of both direct and cross-examination. The jury heard that Guariglia's past included: bribery of numerous government officials, including Congressman Biaggi and Garcia, Richard D. Ramirez of the Navy, Gordon Osgood of the Army, Jerrydoe Smith of the Postal Service, Peter Neglia of the Small Business Administration and Vito Castellano of the National Guard; commercial bribes to bank officials and a Con Edison employee; countless false filings with the Securities and Exchange Commission, the Small Business Administration and the Internal Revenue Service; the use of kickbacks, frauds and the use of the "FHJ slush fund" to steal $1,624,702 from Wedtech; the payment of over $500,000 in illegal payoffs to union officials for labor peace; the fabrication of a Navy telex to inflate Wedtech's apparent profit; concealing ill-gotten gains in nine foreign bank accounts; false statements to District Attorney Morgenthau and his staff when the investigation began, and, during the course of the investigation, obtaining a false Swedish passport. The defendants

---

4. In this connection, the defendants renew their obligations to a trial ruling excluding evidence that Guariglia's explanation was a further falsehood, as certain business records of the casino permitted the conclusion that he had in fact gambled. The defendants' proffer having tended only to impeach Guariglia as to a collateral matter, whether he had gambled, the extrinsic evidence was excluded, particularly in the face of the government's proffer of two witnesses it would call—should the records be received— who would testify that they were with Guariglia on those occasions and that he did *not* gamble. Observing that the proposed defense witness, the custodian of the casino records, could not testify beyond the records as to who had actually gambled on that occasion, and that evidence of Guariglia's gambling being then, and now, clearly collateral to the guilt or innocence of the defendants, I concluded that this would have created a mini-trial on a collateral issue and accordingly declined to receive the defense-proffered documents and witness. Record at 5989–99, 6072–77, 6084–87.

also brought out post-cooperation wrongdoing in connection with tax irregularities, arguable continued gambling in Atlantic City, and continued failure to make restitution to the Wedtech shareholders; thus, when they argue that the Puerto Rico gambling uniquely provided evidence of post-cooperation wrongdoing, which they had desperately sought to show at trial, the defendants overstate the value of this evidence. Accordingly, the additional incidents of dishonesty discovered since the trial could in no way have altered the jury's perception of the witness. *See United States v. Gilbert,* 668 F.2d at 96 (citing *United States v. Rosner,* 516 F.2d 269, 273–74 (2d Cir.1975)).

It is also appropriate to note that the jury's verdict showed that it clearly appreciated Guariglia's blackened past, making it highly unlikely that any further, relatively minor instances of discredit would have influenced their verdict. Although the jury convicted the defendants on many counts, it distinguished and acquitted on those counts in which the testimony of Guariglia and Mario Moreno, another well-impeached Wedtech officer, was uncorroborated by substantial independent evidence of the defendants' guilt, including documents, admissions and other witnesses. For instance, the jury acquitted London and Chinn on Counts Eight and Nine, which charged these defendants with having accepted a $240,000 commercial bribe in exchange for Chinn's vote in favor of certain benefit packages for Guariglia and Moreno. Because there was no corroboration of the payment, the jury did not accept the prosecution witnesses' word alone, and acquitted. *See Gilbert,* 668 F.2d at 97. On the other hand, the jury did find the defendants guilty on those charges that were corroborated by many unimpeached, independent witnesses, and by a clear, extensive trail of documents, cancelled checks, and, in certain cases, incriminating statements by the defendants themselves.

Accordingly, there is no need for a hearing, and, as Guariglia's perjury was about a collateral, non-material matter, and would not in any event have had the slightest influence on the jury's verdict, the motions for a new trial are denied.

So ordered.