UNITED STATES of America, Plaintiff,

v.

**Flavio TAVERAS, Defendant.**

**No. 91 Cr. 147 (DNE).**

United States District Court, S.D. New York.

Dec. 1, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Deborah A. Swindells, Asst. U.S. Atty., of counsel), for U.S.

Ivan S. Fisher, New York City (Kenneth M. Tuccillo, of counsel), for defendant.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

On May 30, 1991, Flavio Taveras was convicted on seven counts following a jury trial held before this Court. Taveras was convicted of four narcotics crimes, includ-ing: (1) conspiracy to distribute more than one kilogram of cocaine and more than fifty grams of crack in violation of 21 U.S.C. § 846; (2) possession with intent to distribute and distribution of two kilo-grams of cocaine within one thousand feet of a school in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 860, and 18 U.S.C. § 2; (3) possession with intent to distribute approximately 288 grams of crack in viola-tion of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 860, and 18 U.S.C. § 2; and (4) maintaining an apartment for the purpose of distributing and using cocaine and crack in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. Taveras was also convicted on three weapons counts, including: (1) carry-ing a loaded 9 millimeter handgun during a drug trafficking crime in violation of 18 U.S.C. § 924(c); (2) use of nine additional guns (two loaded AK–47 semi-automatic as-sault rifles, two loaded 12 gauge shot guns, a loaded Colt 357 Magnum, two loaded 22 caliber rifles, a loaded 9 millimeter hand-gun, and a loaded .45 caliber pistol) in connection with narcotics trafficking in vio-lation of 18 U.S.C. § 924(c); and (3) posses-sion of a weapon by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

This case is currently before the Court on defendant's motion for a new trial pur-suant to Federal Rule of Criminal Proce-dure 33. Defendant claims that he is enti-tled to a new trial because the Government failed to disclose certain impeachment evi-dence regarding one prosecution witness. Specifically, the Government did not advise defendant that a prosecution witness, Car-los Fournier, had been arrested in 1986 under the alias Carlos Evertsz for stealing government property, a handgun. It ap-pears from the record that this evidence was not conveyed to defendant's attorney because the arrest does not appear in Four-nier's criminal record; although Assistant United States Attorney ("AUSA") Deborah A. Swindells was aware that Fournier was involved in some incident involving the theft of Government property, it was her "understanding that the circumstances were such that no arrest had been made or any charges brought." *Letter from Debo-rah A. Swindells, AUSA, to Judge David N. Edelstein (Nov. 5, 1991)* (on file in the Southern District of New York) ("Novem-ber 5, 1991 Letter"), at 2. According to

defendant, the Government's failure to disclose this impeachment evidence "whether intentional or not, violated Taveras' due process protections and requires a new trial." *Memorandum of Law and Appendix in Support of Defendant's Motion for a New Trial* ("Memorandum in Support"), at 7.

## DISCUSSION

■ Federal Rule of Criminal Procedure ("Rule") 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Under *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Government's inadvertent [1] nondisclosure of impeachment evidence requires a new trial only if the evidence is material. *See United States v. Underwood*, 932 F.2d 1049, 1052 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). Evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383 (Blackmun, J.)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987) (same); *United States v. Rivalta*, 925 F.2d 596, 597 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 215, 116 L.Ed.2d 173 (1991) (same); *United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir.), *cert. denied*, 498 U.S. 921, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990) (same). Where there is no showing of bad faith on the part of the Government, "the defendant bears the burden of demonstrating that the new [impeachment] evidence would probably have resulted in an acquittal." *United States v. Castano*, 756 F.Supp. 820 (S.D.N.Y.1991) (citations omitted). In order for the Court to grant defendant's Rule 33 motion, it must find that the new evidence is such that it would *probably* have led the jury to acquit the defendant. *See United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982) (citing *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir.1980); *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976)); *see also United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976) (relief under Rule 33 merited only if evidence would lead to acquittal and create a "reasonable doubt that would not otherwise exist").

■ The gravamen of Taveras' argument is that, had evidence of Fournier's 1986 arrest been made known to defense counsel, defendant would have used this evidence to discredit Fournier in the eyes of the jury. *See Memorandum in Support* at 7. Taveras argues that, absent Fournier's testimony, a jury would have found defendant not guilty. *Id.* at 9. This argument is unavailing.

■ "Impeachment material, if cumulative of other such evidence in a case, is rarely sufficient to justify a new trial." *United States v. Pagan*, 1992 WL 17963, *2, 1992 U.S.Dist. LEXIS 671, *5 (S.D.N.Y. Jan. 23, 1992) (citing *United States v. Myers*, 534 F.Supp. 753, 756 (E.D.N.Y. 1982)). Evidence that would be offered solely to further impeach a witness whose character was shown at trial to be questionable is merely cumulative and is not "material" within the meaning of *Bagley*. *See United States v. Tutino*, 883 F.2d 1125, 1140 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). It is beyond reasonable dispute that "new evidence which is 'merely cumu-

---

1. Defendant has made no showing, and there is nothing in the record to indicate, that the Government acted in bad faith in failing to disclose information concerning Fournier's criminal history. After a careful examination of the trial transcript, as well as the various submissions and correspondence received by this Court following the conclusion of the trial, the Court finds that while Ms. Swindells acted without the diligence expected of the United States Attorney's office, there is absolutely no evidence that she acted in bad faith. The fact that Ms. Swindells promptly notified this Court of her error further belies any inference of bad faith. *See November 5, 1991 Letter.*

lative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956) (citations omitted). Where evidence adduced to support a Rule 33 motion is "only an additional part of a cumulative attack on a witness's credibility, the motion for a new trial [is] properly denied." *Gilbert,* 668 F.2d at 97. As the *Gilbert* court aptly reasoned, where a witness' credibility has already been called into question during a trial, further evidence of the witness' misdeeds or untrustworthiness "could hardly have transformed the jury's image of [the witness] from paragon to knave." *Id.* at 96.

I am convinced beyond peradventure of doubt that the omitted impeachment evidence was merely cumulative and would have had absolutely no impact on the ultimate resolution of the trial. During the trial, Fournier testified about numerous prior arrests, *see Trial Transcript* ("TR"), at 223–70, including a 1986 arrest for possession of a loaded weapon, a 1984 arrest for forgery, and an arrest for murder in the Dominican Republic. The weapons arrest, quite similar to the omitted evidence, occurred after Fournier had begun cooperating with the Drug Enforcement Agency ("DEA"). On the stand, Fournier admitted that he had committed the forgery and had possessed the loaded weapon for which he was arrested in Queens, New York. *Id.* The Government stipulated that Fournier would testify that he had not filed tax returns for at least four years preceding trial, *see TR* at 561, and Fournier testified that he had received financial remuneration from the DEA in connection with the Taveras case. *See TR* at 225–26. Indeed, defense counsel's cross-examination of Fournier was both extensive and devastating. *See TR* at 247–368. As I stated to counsel during a conference and after hearing evidence concerning Fournier's character, "I can assume he is not ready for canonization. I know he is a criminal." *TR* at 371. I have no doubt that the jury reached the same conclusion.

Moreover, Fournier's testimony was by no means critical to the prosecution's case-in-chief. The most cursory examination of the record demonstrates that even if the jury wholly discounted Fournier's testimony, there was ample evidence upon which the jury could have based their finding of defendant's guilt. Taveras was present at the scene of the narcotics transaction at 155th Street and Union Avenue in the Bronx and was observed by surveillance agents speaking with the other participants in the deal. At the time of his arrest, Taveras had on his person a loaded 9 millimeter semi-automatic handgun, a beeper, the telephone number of a co-defendant, a receipt showing that he had paid a telephone bill for a telephone registered to "Juan Taberas" and situated in Apartment 4A at 1849 Gleason Avenue, Bronx, New York, and the keys to that apartment. It was shown that Taveras paid the February rent for the Gleason Avenue apartment. When agents searched this apartment they found a veritable arsenal of deadly weapons, each of which had been fired and several of which had their serial numbers obliterated. Further, in addition to these nine weapons, agents found in the Gleason Avenue apartment 288.5 grams of crack, a money counter, certain incriminating records and other paraphernalia linking Taveras to the drug trafficking trade. Finally, Taveras's co-defendant, Molina Caceres, delivered damning testimony before the jury, fingering Taveras as the supplier of the cocaine which was the subject of the February 6, 1991 drug transaction at which Taveras was arrested.

Thus, the Court finds that even if the evidence of Fournier's subsequent arrest had been disclosed to the defense, the result of the proceeding would have been identical. *See, e.g., Underwood,* 932 F.2d at 1052. Taveras has made no showing sufficient to undermine confidence in the outcome of his trial. While governmental misconduct, where found, will not be countenanced by this Court, the fact that cumulative impeachment evidence was omitted will not, without more, support a retrial pursuant to Federal Rule of Criminal Procedure 33. It cannot be said that the addi-

tional information concerning Fournier's criminal history creates a reasonable probability that, had it been disclosed to the defense prior to trial or during the trial, the jury's verdict would have been different.

### CONCLUSION

For the reasons stated above, defendant's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 is hereby DENIED.

SO ORDERED.