UNITED STATES of America, Appellee,

v.

Raoul RIVALTA and Fausto Rivalta,
Defendants–Appellants.

No. 180, Docket 90–1268.

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1991.

Decided Feb. 12, 1991.

As Amended on Denial of Rehearing
April 2, 1991.

Peter J. Kahn, Washington, D.C. (Williams & Connolly, Thomas J. Murphy, of counsel), for defendants-appellants.

J. Gilmore Childers, New York City, Asst. U.S. Atty. S.D. New York (Otto G. Obermaier, U.S. Atty. S.D. New York, David E. Brodsky, Asst. U.S. Atty., Peter M. Kougasian, Sp. Asst. U.S. Atty., of counsel), for appellee.

Before KAUFMAN, FEINBERG, and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Raoul and Fausto Rivalta appeal from amended judgments of conviction filed on April 12, 1990 in the United States District Court for the Southern District of New York, Kevin T. Duffy, J., after their prior appeals to this court resulted in a remand for resentencing. *United States v. Rivalta*, 892 F.2d 223 (2d Cir.1989). Our prior opinion includes, and we do not repeat here, a detailed description of the factual background of this case, as well as an analysis of the evidence supporting the convictions and the sentences. Familiarity with our prior opinion is assumed.

The Rivaltas were convicted in separate jury trials of the interstate transportation of a stolen diamond in violation of 18 U.S.C. § 2314 and the sale of the diamond in violation of 18 U.S.C. § 2315. When the Rivaltas were originally sentenced in March and April 1989, the district court

departed from the applicable range under the United States Sentencing Guidelines (U.S.S.G.) of approximately two years and sentenced each defendant to the statutory maximum of 10 years on each count, to be served consecutively. The district judge based this departure on his finding that the offenses of conviction were "intertwined" with the death of the original consignee of the stolen diamond, Barbara Mangiameli, and found authority to depart in U.S.S.G. § 5K2.1, which identifies death as a factor that may warrant an increase from the guideline range. On appeal, this court affirmed the Rivaltas' convictions, but held that on the facts of this case, an upward departure under U.S.S.G. § 5K2.1 would be warranted only if defendants had "intended" or "knowingly risked" Mangiameli's death. We therefore remanded for further findings with regard to the sentences and reconsideration of the sentences and instructed that any further appeal should be assigned to the same panel, if practicable.

In April 1990, the district court made additional findings and reimposed the same sentences. This appeal, pursuant to our instruction, now comes before the panel that heard the prior appeal. Appellants again challenge their sentences, and also claim that they are entitled to a new trial because of the government's belated disclosure of exculpatory evidence shortly before resentencing. For the reasons set forth below, we affirm.

### 1. The *Brady* Issue

▋ Shortly before appellants were scheduled to be resentenced, the government first disclosed a police report to the defense. According to the report, a friend of Mangiameli, Irene Goldsmith, had told the police over the telephone that she had seen Mangiameli walking on a Manhattan street some 30 hours after she was allegedly last seen talking to Fausto Rivalta on their apartment building intercom. Appellants argue that the government should have disclosed this information prior to trial pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the government concedes that it would have been "prudent practice" to do

so. The parties also agree that if the information withheld is "material," defendants are entitled to a new trial. The sole issue, then, on appellants' *Brady* claim is whether the Goldsmith statement was "material" to their guilt.

In the context of an alleged *Brady* violation, " '[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.)); see also *United States v. Bagley,* 473 U.S. at 685, 105 S.Ct. at 3385 (opinion of White, J.); *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.), cert. denied, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988). Appellants argue that the Goldsmith statement would have created reasonable doubt in the minds of the jury, and that there is thus a "reasonable probability" that "the result of the proceeding would have been different."

The district judge, who presided over the trials of both Rivaltas as well as the sentencing proceedings both before and after remand, denied defendants' motion for a new trial, stating that in his view the Goldsmith statement would not "create[ ] reasonable doubt at all." We have noted that the trial judge's conclusion as to the effect of nondisclosure on the outcome of the trial is "entitled to great weight" because "[a]fter all, [he] was at the trial. We were not." *United States v. Provenzano,* 615 F.2d 37, 49 (2d Cir.), cert. denied, 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980); see also *United States v. Petrillo,* 821 F.2d 85, 88 (2d Cir.1987). Relying solely on *Provenzano* and *Petrillo,* the government contends that "[l]ike other factual determinations, the District Court's findings as to materiality should not be disturbed unless clearly erroneous." However, in those cases we conducted our own "independent examination" of the materiality of the un-

disclosed information. *United States v. Provenzano,* 615 F.2d at 49; *United States v. Petrillo,* 821 F.2d at 89–90. In other cases where the ultimate question is whether alleged prosecutorial misconduct was likely to have affected the outcome, we have similarly made an "independent examination" of the record. See, e.g., *Mills v. Scully,* 826 F.2d 1192, 1195 (2d Cir.1987).

We have thus treated the materiality of an alleged *Brady* violation not, as the government contends, as a purely factual issue, but as a mixed question of law and fact, consistent with the holdings of a number of other circuits. See, e.g., *United States v. Buchanan,* 891 F.2d 1436, 1440 (10th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *Carter v. Rafferty,* 826 F.2d 1299, 1306 (3d Cir.1987), cert. denied, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988). Moreover, the Supreme Court's formulation of the materiality inquiry—whether there is a reasonable probability that the result of the proceeding would have been different— is derived from a case in which the Court had explicitly held that the same inquiry in a different context presented a mixed question of law and fact. See *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.) (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)); *Strickland v. Washington,* 466 U.S. at 698, 104 S.Ct. at 2070. We therefore reject the government's suggestion that we employ the "clearly erroneous" standard of review.

Nevertheless, we agree with the district court that the alleged *Brady* violation here was not "material." We note that appellants do not argue that nondisclosure of the Goldsmith statement foreclosed other lines of inquiry, thereby depriving them of other evidence. Nor do they argue that Goldsmith's statement would have been confirmed or strengthened by her testimony; indeed, they decided not to subpoena her to the sentencing hearing. Appellants rely solely on the statement itself; they principally argue that the government's case against them was built on inferences from the chronology of events and that Goldsmith's statement destroys that chronology because it shows that Mangiameli was "alive and well at a time when the Rivalta brothers supposedly were fleeing Manhattan." Appellants also contend that the Goldsmith statement supports the testimony of defense witness Hodges at Fausto Rivalta's trial that he saw Mangiameli with Fausto Rivalta in Florida at about the time the Rivaltas sold the diamond there, suggesting that Mangiameli herself transported the diamond to Florida.

However, even if Goldsmith's statement indicating that Mangiameli was "alive and well" on February 5, 1988 when the Rivaltas were attempting to leave Manhattan had been admitted, its impact at trial would have been greatly diminished by other compelling evidence that Mangiameli disappeared on February 4, 1988.

In any event, the parties concentrated at trial, as they should have, on the elements of the crimes with which defendants were charged. Indeed, the government emphasized in its summations at both trials that it was not attempting to show precisely how the diamond was transferred from Barbara Mangiameli to the Rivaltas. The government told the jury, and the judge repeated in his charge, that such proof was not necessary for the alleged crimes at issue. After reviewing the evidence presented at trial, which is summarized in our prior opinion, see *United States v. Rivalta,* 892 F.2d at 224–26, we do not find the brief police report of the Goldsmith telephone call sufficient to "undermine confidence in the outcome" of the Rivaltas' trials.

2. The Sentences

■ With regard to the reimposed sentences, appellants rely heavily on the Goldsmith statement and renew the argument they made on their prior appeal that the evidence is insufficient to support a finding by a preponderance of the evidence that the Rivaltas were responsible for Mangiameli's death. See *id.* at 230. We reject-

2

599

ed this argument previously, see *id.* at 231, and we are not persuaded otherwise by the Goldsmith statement.

We come, finally, to our original reason for remanding this case. As noted above, we held that on the facts of this case, an upward departure under § 5K2.1 for the death of Mangiameli would be warranted only if the Rivaltas had "intended" or "knowingly risked" her death. The district court made more findings regarding the circumstances of Mangiameli's death than our remand required, some of which defendants persuasively challenge. We need not, however, consider these additional findings. Our remand was based on the absence of an explicit finding by the court that the defendants had "intended" or "knowingly risked" Mangiameli's death. After remand, the district judge made such a finding, which is not itself clearly erroneous. Therefore, we find that the upward departure was authorized by U.S.S.G. § 5K2.1. In light of this determination, we need not consider the parties' arguments as to whether other sections of the Guidelines authorizing upward departure would also apply.

We have considered all of appellants' arguments, and we affirm the amended judgments of the district court as to both appellants.