UNITED STATES of America,

v.

Daniel PAGAN, a/k/a "Boom," Defendant.

No. 91 Cr. 39 (DNE).

United States District Court,
S.D. New York.

Aug. 17, 1993.

Amanda & Guttlein, New York City (Jorge Guttlein, of counsel), for Daniel Pagan.

Mary Jo White, U.S. Atty., S.D.N.Y. (Robert S. Khuzami, Asst. U.S. Atty.), for U.S.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

Defendant Daniel Pagan was convicted on April 1, 1991, after a four-day trial, of possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B). He has moved for a new trial pursuant to Federal Rule of Criminal Procedure ("Rule") 33, which provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Mr. Pagan contends that he did not receive effective assistance from his trial attorney, Mr. Peter K. Wilson, who supposedly failed to present an adequate defense based upon misidentification.

Mr. Pagan's motion is untimely. Rule 33 provides that motions for a new trial, other than those based upon newly discovered evidence, "shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period." Fed.R.Crim.P. 33. The

Second Circuit has stated that Rule 33's seven-day limitation is "jurisdictional. If a motion is not timely filed, the district court lacks power to consider it." *United States v. Dukes*, 727 F.2d 34, 38 (2d Cir.1984). Mr. Pagan does not allege, nor does this Court find, that his motion involves newly discovered evidence.[1] The exclusive basis of Mr. Pagan's motion is "tactical decisions by [defendant's] lawyer as to how to handle the evidence already in his possession at trial." *Id.* Thus, pursuant to Rule 33, Mr. Pagan had to file the motion, or request an extension to file the motion, no later than seven days after the jury's guilty verdict in April 1991. *See Dukes*, 727 F.2d at 38; *see also United States v. Brown*, 742 F.2d 363, 368 (7th Cir.1984); *United States v. Jones*, 88 Cr. 824, 1989 WL 66668 *2–3, 1989 U.S. Dist. LEXIS 6671 *7 (S.D.N.Y. Jun. 14, 1989). Because he did not file this motion until July 1993, more two years after the jury rendered its verdict, Mr. Pagan's motion is untimely and thus barred on jurisdictional grounds.

■ Even assuming jurisdiction, Mr. Pagan has failed to establish ineffective assistance of counsel. To demonstrate that an attorney provided ineffective assistance, a petitioner must show both that counsel's performance was deficient and that this deficient performance prejudiced defendant. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir.1990); *United States v. Reiter*, 897 F.2d 639, 645 (2d Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *United States v. Nersesian*, 824 F.2d 1294, 1320–21 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). Failure to prove both elements of this test—deficient performance and prejudice—results in denial of a motion for a new trial based upon ineffective assistance of counsel. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069; *Nersesian*, 824 F.2d at 1321.

■ Performance is deficient if, viewed at the time of the conduct and in light of surrounding circumstances, counsel's performance falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2066. Due, however, to the difficulties inherent in an analysis that requires adopting counsel's perspective and then rendering an after-the-fact assessment of performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065; *see Aguirre*, 912 F.2d at 560. Prejudice exists where "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ Mr. Pagan has failed to show that Mr. Wilson's performance fell below an objective standard of reasonableness. As previously noted, Mr. Pagan bases his ineffectiveness claim on trial counsel's failure to address effectively whether the confidential informant ("CI")[2] incorrectly identified Mr. Pagan as the seller of cocaine. Mr. Pagan accuses Mr. Wilson of the following shortcomings: (1) Although Special Agent William McMahon of the Bureau of Alcohol, Tobacco and Firearms ("ATF") testified that the CI identified defendant when Special Agent McMahon and the CI drove past him, Mr. Wilson never delved into the circumstances of this "drive-by;" (2) Mr. Wilson knew of the CI's prior emotional problems and dishonorable discharge, yet there is no record he attempted to subpoena those records; and (3) Mr. Wilson neither requested nor submitted a standard jury instruction on identification, and he failed to file pre-trial motions addressing the identification issue. *Memorandum of Law in Further Support of Defendant's Motion*

---

1. Mr. Pagan previously filed a motion for a new trial based upon newly discovered evidence, which allegedly consisted of undisclosed impeachment material concerning the Government's confidential informant. In a Memorandum & Order dated January 23, 1992, this Court denied Mr. Pagan's motion. *See United States v.*

*Pagan*, 91 Cr. 39, 1992 WL 17963, 1992 U.S. Dist. LEXIS 671 (S.D.N.Y. Jan. 23, 1992).

2. The Government's evidence consisted in part of testimony from a confidential informant, Juan Nieves, who testified that he purchased cocaine from Mr. Pagan on four occasions.

*for a New Trial and other Relief* ("Defendant's Memo"), at 3–4, 9.

Setting aside for a moment these alleged shortcomings, an analysis of Mr. Wilson's efforts to address the misidentification issue at trial reveals the reasonableness of his advocacy on this point. Indeed, perhaps in an attempt to highlight the puissance of the identification issue, Mr. Wilson's efforts in this area are catalogued in defendant's motion papers. Mr. Pagan notes that: (1) despite having known the CI "for a long period of time," the CI did not identify Mr. Pagan to law enforcement officials prior to his arrest; (2) the physical description provided by the CI did not match that of the defendant; and (3) another individual, "Boom Vazquez," rather than "Boom Pagan," was the target of the investigation. *Defendant's Memo*, at 9. Because Mr. Wilson addressed these points during trial, Mr. Pagan has inadvertently illuminated the many ways that Mr. Wilson explored the possibility of a misidentification. As to the CI's physical description, the following colloquy occurred between Mr. Wilson and Special Agent McMahon:

Question ("Q"): How did the informant describe the person he had made the buy off of on December 18th?

Answer ("A"): He described him as a male Hispanic, 5–foot–11, approximately 180 pounds, in his early 20's, wearing a black jacket and blue jeans.

[Tr. at 90]. As to the allegation that an individual named Vazquez was the target of the investigation, Mr. Wilson addressed this issue both during his cross-examination of Special Agent McMahon and in summation. [Tr. at 88–92, 366]. In doing so, Mr. Wilson also canvassed the issue of the timing of the CI's identification: Special Agent McMahon testified that on or around December 18, 1990, the CI reported that he bought cocaine from "Boom," apparently a reference to Mr. Pagan. Although Special Agent McMahon's buy report lists the seller of the cocaine as "Boom Vazquez," Special Agent McMahon testified that he mistakenly added the name

Vazquez because a jeep involved in the transaction was registered to an Edwin Vazquez. [Tr. at 176]. Accordingly, it is apparent that the CI did identify Mr. Pagan prior to his arrest, but that in reporting this fact, Special Agent McMahon mistakenly added the name Vazquez to the CI's identification of "Boom." [3]

As to the identification issues that counsel did not raise, the Supreme Court has held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular'—in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) (quoting John W. Davis, *The Argument of an Appeal*, 26 A.B.A.J. 895, 897 (1940)). An analysis of the arguments not raised by Mr. Wilson concerning the issue of identification reveals that in all likelihood Mr. Wilson served his client's interests by not raising them. At the very least, his decision not to raise the arguments in question does not constitute ineffective assistance of counsel.

As to Mr. Wilson's alleged failure to delve into the drive-by identification, it is apparent that this is not a basis for finding Mr. Wilson's performance deficient. While the due process clause protects a defendant from identification procedures that create " 'a very substantial likelihood of irreparable misidentification,' " the absence of any police identification procedure whatsoever necessarily dooms any attempt to exclude a subsequent in-court identification allegedly derived from that procedure. *See United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir.1992) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)), *petition for cert. filed,* (June 23, 1993). In this case, the CI did not identify the defendant during a police identification

---

**3.** Aside from the question of whether the CI identified Mr. Pagan or one "Vazquez" as the seller of the cocaine, Mr. Pagan has not presented any evidence that the target of the investigation was Vazquez. Although the "Title of Investi- gation" box in Special Agent McMahon's Reports lists Edwin Vazquez, such a label is irrelevant to the identity of the individual ultimately charged in the investigation.

procedure such as a lineup, showup, or photographic array. The absence of any identification procedure precludes the possibility that an unduly suggestive procedure tainted the CI's in-court identification. Even if the drive-by identification is considered an unduly suggestive identification procedure, the CI's in-court identification of Mr. Pagan is admissible. A witness' in-court identification of a defendant is admissible, even if an identification procedure must be suppressed, if the witness has an independent origin for the in-court identification, untainted by the improper identification procedure. *See United States v. Wade*, 388 U.S. 218, 239–41, 87 S.Ct. 1926, 1938–39, 18 L.Ed.2d 1149 (1967); *United States v. Archibald*, 734 F.2d 938, 941 (2d Cir.1984); *Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Mr. Pagan, in an affidavit and in papers presented by his counsel to this Court, admits that he has known the CI since childhood. Moreover, the CI testified that he had spoken to or seen the defendant 40 or 50 times prior to the December 18, 1990 purchase of cocaine. Given this independent basis for the identification, any attack on the drive-by identification does not affect the reliability of the in-court identification. The aim of providing effective representation did not dictate that Mr. Wilson raise this meritless issue either in a pre-trial motion or during trial.

■ Defendant also asserts that Mr. Wilson's performance was deficient due in part to his failure to subpoena records concerning the CI's dishonorable discharge and prior emotional problems. Presumably, this argument is not directly related to the reliability of the identification, but to the general credibility of the CI. This information is at most cumulative impeachment material that, if it had been presented to the jury, was not reasonably likely to alter the verdict. "Impeachment material, if cumulative of other such evidence in a case, is rarely sufficient to justify a new trial." *United States v. Pagan*, 1992 WL 17963, *2, 1992 U.S. Dist. LEXIS 671, *5 (S.D.N.Y. Jan. 23, 1992) (citing *United States v. Myers*, 534 F.Supp. 753, 756 (E.D.N.Y.1982)). Evidence that would be offered solely to further impeach a witness whose character was shown at trial to be questionable is merely cumulative and is not "material." *See United States v. Tutino*, 883 F.2d 1125, 1140 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). It is beyond reasonable dispute that "new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Mesarosh v. United States*, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956) (citations omitted). Where evidence adduced to support a Rule 33 motion is "only an additional part of a cumulative attack on a witness's credibility, the motion for a new trial [is] properly denied." *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). As the *Gilbert* court aptly reasoned, where a witness' credibility has already been called into question during a trial, further evidence of the witness' misdeeds or untrustworthiness "could hardly have transformed the jury's image of [the witness] from paragon to knave." *Id.* at 96.

At trial, Mr. Wilson adduced evidence that the CI: (1) used cocaine daily for three years; (2) between 1987 and 1989 bought, cut, packaged, and sold nine to ten ounces of cocaine each month for a nine-month period, and three to six ounces each month for the rest of that time; (3) earned $40,000 selling cocaine in 1988 and failed to report this income on his tax returns; (4) while in the army, punched a lieutenant and intentionally failed a physical training test to avoid formal charges; (5) secretly sold 40 guns in 1988 and 1989 while working as an informant for the Drug Enforcement Agency ("DEA"); and (6) received between $3,000 and $4,000 while working as a DEA agent, and failed to report this on his income tax returns. Thus, Mr. Wilson utilized a whole range of material, including the CI's conduct while in the armed forces and his emotional stability, in attempting to impeach his credibility. Given the evidence introduced to impeach the CI's credibility, any additional impeachment material contained in the non-subpoenaed records was not material, but rather was only cumulative of other evidence admitted at trial.

■ Mr. Pagan also asserts that Mr. Wilson's performance was ineffective because he failed to request or submit a jury instruction on misidentification, file pre-trial motions on this point, or elicit testimony at trial from several witnesses suggested by Mr. Pagan. Mr. Wilson's failure to make pre-trial motions or to request a jury charge on misidentification is not tantamount to ineffective assistance of counsel. The Second Circuit has held that defense counsel is not required "routinely to file boilerplate motions merely to vindicate their professional competence without regard for the grounds supporting such motions." *United States v. DiTommaso,* 817 F.2d 201, 215 (2d Cir.1987). Given the lack of merit in the avenues that Mr. Wilson allegedly should have explored concerning the identification issue, Mr. Wilson " 'exercised sound professional discretion by declining to make' " the motions in question. *United States v. Boothe,* 994 F.2d 63 (2d Cir.1993) (quoting *United States v. Caputo,* 808 F.2d 963, 967 (2d Cir.1987)).

■ As to Mr. Wilson's failure to request a jury charge, "the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *United States v. Cronic,* 466 U.S. 648, 656–57 n. 19, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984). Mr. Wilson adequately addressed both the misidentification issue and the CI's credibility at trial. He cross-examined Special Agent McMahon on the identification issue, urged the possibility of misidentification in closing remarks to the jury, raised at least six bases for impeaching the CI, and saw the jury receive a charge concerning the CI's credibility. In light of these efforts, Mr. Wilson's failure to request a specific identification charge is not tantamount to deficient performance. *See, e.g., United States v. Daniels,* 558 F.2d 122, 127 (2d Cir.1977).

■ Moreover, Mr. Wilson's failure to call certain witnesses is within the sphere of attorney strategy. Some of the suggested witnesses appear on defendant's pre-trial witness list; Mr. Wilson's decision not to call

them represents a reasonable gambit. "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988). Moreover, the Second Circuit has stated that the decision of whether to call a particular witness " 'fall[s] squarely within the ambit of trial strategy, and, if reasonably made' cannot support an ineffective assistance claim." *United States v. Eisen,* 974 F.2d 246, 265 (2d Cir.1992) (quoting *Nersesian,* 824 F.2d at 1231), *cert. denied,* —— U.S. ——, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993). Given that defendant's suggested witnesses were not present during the occasions when the CI purchased cocaine from Mr. Pagan, Mr. Wilson's strategy cannot be deemed unreasonable. Therefore, this Court concludes that Mr. Wilson represented Mr. Pagan in a competent and reasonable fashion.

■ In addition, Mr. Pagan has failed to demonstrate that counsel's advocacy prejudiced defendant. The Government adduced substantial evidence against Mr. Pagan at trial: the CI identified Mr. Pagan as the person from whom he purchased cocaine on four separate occasions; each purchase was evidenced by tape recordings of the defendant discussing the price of cocaine, whether the cocaine was cut, and the CI's resale price; the CI's testimony was corroborated by the surveillance of Special Agent McMahon and the fact that Special Agent McMahon seized drug paraphernalia from a juke box to which Mr. Pagan had the keys. Given the weight of evidence indicating that defendant sold cocaine to the CI, Mr. Pagan has failed to demonstrate that he would have been acquitted had Mr. Wilson explored the suggested avenues concerning the misidentification issue.

Lastly, in a letter dated August 13, 1993, which this Court received at 5:00 p.m. on August 16, counsel for Mr. Pagan, Mr. Jorge Guttlein, sought to supplement the motion he had already made on behalf of Mr. Pagan. In his letter, Mr. Guttlein asserts that Mr.

Wilson was "in a sense ambushed by misinformation provided to him by the government prior to opening statements at the trial" relating to the CI's prior criminal history. *Letter from Jorge Guttlein, counsel for Daniel Pagan, to Honorable David N. Edelstein* ("Guttlein Letter") (August 13, 1993) (on file in the Southern District of New York). The gist of counsel's argument is that due to the Government's failure to discharge its disclosure obligations, Mr. Wilson's credibility with the jury was undermined when he failed to introduce evidence in support of a statement made in his opening address. In opening statements, Mr. Wilson told the jury that the CI had been convicted of a crime, but then provided no evidence on the issue. Mr. Guttlein explains that after the Government moved *in limine* to preclude cross-examination of the CI on a prior conviction, "it was revealed that the [CI] was not convicted of a crime, but rather a violation for disorderly conduct." *Guttlein Letter,* at 2. According to counsel, "[t]he fact that defense counsel represented certain facts to be true to the jury and at trial no evidence supported the contention, clearly undermined defense counsel's credibility before the jury and certainly prejudiced the defendant Daniel Pagan." *Guttlein Letter,* at 2. Because the Government failed to clarify this issue, Mr. Guttlein contends that it inadvertently failed to discharge its disclosure obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ It is important to note that Mr. Pagan's current counsel does not contend that in allegedly failing to clarify the issue of the CI's prior criminal record, the Government acted in bad faith. Rather, counsel avers that "[t]he government should have known that his criminal record or lack thereof would be a central focus of the defense, as is reflected by the defense's opening statement. The government's apparent lack of effort to clarify this issue prior to trial constitutes a deprivation of the defendant's right to a fair trial." *Guttlein Letter,* at 2–3. The Government's inadvertent failure to disclose impeachment evidence, or in this case clarify an issue concerning impeachment evidence, does not require a new trial unless the evidence is material: "[E]vidence is material only if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *see United States v. Garcia,* 936 F.2d 648, 655 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991); *United States v. Underwood,* 932 F.2d 1049, 1052 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *United States v. Rivalta,* 925 F.2d 596, 597 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 215, 116 L.Ed.2d 173 (1991); *United States v. Bejasa,* 904 F.2d 137, 140 (2d Cir.), *cert. denied,* 498 U.S. 921, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990). Where there is no showing of bad faith on the part of the Government, "the defendant bears the burden of demonstrating that the new [impeachment] evidence would probably have resulted in an acquittal." *United States v. Castano,* 756 F.Supp. 820 (S.D.N.Y.1991) (citations omitted). In order for the Court to grant defendant's Rule 33 motion, it must find that the new evidence is such that it would probably have led the jury to acquit the defendant. *See Gilbert,* 668 F.2d at 96 (citing *United States v. Alessi,* 638 F.2d 466, 479 (2d Cir.1980)); *United States v. Stofsky,* 527 F.2d 237, 243 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976).

■ Mr. Guttlein's argument hinges on a lone discrepancy between defense counsel's opening statement and the impeachment evidence adduced at trial. He suggests that this discrepancy so affected the jury that it undermines confidence in the outcome of the proceeding. Mr. Wilson attempted to impeach the CI using at least six separate pieces of evidence. *See supra,* majority opinion at 92. The trial transcript reveals that he performed this task competently. Given the significant pains Mr. Wilson took to impeach the CI, and his able efforts in this endeavor, a lone discrepancy in the realm of impeachment does not create a reasonable probability that, absent the discrepancy, Mr. Pagan would have been acquitted. This conclusion is buttressed by the significant

amount of corroborated evidence adduced at trial indicating that Mr. Pagan committed the charged crime. Thus, Mr. Pagan's argument is without merit.

### Conclusion

For the reasons stated above, Mr. Pagan's motion for a new trial is DENIED.

SO ORDERED