104 F.3d 351
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Anthony GRADO, Thomas Anzeulotto, aka "Tommy Red,",
Defendants-Appellants.
 Nos. 96-1077(L), 96-1092.
 United States Court of Appeals, Second Circuit.
 Oct. 30, 1996.
 
 AFFIRMED.
 John Apicella (Brooklyn, NY); James R. Froccaro, Jr. (Port Washington, NY)
 Bridget M. Rohde, Asst. U.S. Atty. (Zachary W. Carter, U.S. Atty., James Orenstein, Asst. U.S. Atty., of counsel; E.D.N.Y.) E.D.N.Y.
 Present: MESKILL, CALABRESI, CABRANES, Circuit Judges.
 
 ORDER
 
 1
 Thomas Anzeulotto and Anthony Grado appeal from a judgment entered on January 17, 1996, in the United States District Court for the Eastern District of New York (Block, F.). Anzeulotto and Grado were convicted after a jury trial of conspiring to make extortionate extensions of credit and to use extortionate means to collect extensions of credit in violation of 18 U.S.C. §§ 892, 894. Anzeulotto was also convicted of the substantive loansharking offenses of making extortionate extensions of credit and using extortionate means to collect extensions of credit in violation of 18 U.S.C. §§ 892, 894. Grado was acquitted of the substantive loansharking charges and Anzeulotto was acquitted of using and carrying a firearm in violation of 18 U.S.C. § 924(c). Grado was sentenced to 63 months of imprisonment to be followed by three years of supervised release, and Anzeulotto was sentenced to 96 months of imprisonment to be followed by three years of supervised release.
 
 
 2
 On appeal, Grado and Anzeulotto contend that the district court erred in holding that they were not denied their Fifth Amendment right to a fair trial by the government's failure to disclose evidence favorable to them. Anzeulotto further contends that the district court erred in rejecting his motions for a new trial under Rule 33 of the Federal Rules of Criminal Procedure and 28 U.S.C. § 2255, in which he alleged that his trial attorney had a conflict of interest while representing him. We reject both claims and affirm the district court.
 
 
 3
 The following facts were adduced at trial through the testimony of Robert Molini, Grado's cousin. Molini had been arrested by the DEA on September 9, 1992, for his involvement in a narcotics ring allegedly run by one Frederick Puglisi. Molini testified against Anzeulotto and Grado pursuant to a cooperation agreement with the government.
 
 
 4
 According to this testimony, in the summer of 1991, Molini needed to borrow money to pay for a marijuana shipment related to the Puglisi drug ring. He went to Grado, who introduced him to Anzeulotto. On two occasions, Anzeulotto loaned Molini $20,000 for a ten-day period, with the understanding that Molini would pay back the principal and 20% interest ($4000 for each loan within ten days). Molini was unable to pay back $3500, and fell increasingly into debt to Anzeulotto as interest accrued. Grado made threatening phone calls to Molini from time to time, in response to which Molini made a stream of payments totalling about $5000.
 
 
 5
 On June 8, 1992, Molini received a phone call telling him to go to Stella's pharmacy in Brooklyn. Molini drove to the pharmacy in Puglisi's car with $1000, which he gave to Grado upon arrival. Anzeulotto approached, stated that he wanted the balance of the money in one installment, and asked Molini where he lived. Molini refused to supply his address. Anzeulotto then punched Molini in the face and neck, smashed two of the windows of Puglisi's car, took Molini to an abandoned park, and threatened him at gunpoint to make him disclose his address.
 
 
 6
 Molini gave a fake address, returned to the pharmacy, and called Puglisi to tell him what had happened. Unbeknownst to Molini, Puglisi, Grado, and Anzeulotto, Molini's mobile phone had been wire-tapped with court authorization from June 22, 1992 until July 14, 1992. At trial, eight telephone conversations intercepted over Molini's mobile telephone were introduced into evidence.
 
 
 7
 On January 25, 1995, the jury entered its verdict. On October 12, 1995, Grado and Anzeulotto filed a motion contending that the government had violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963) by suppressing tapes of other conversations. The district court denied the motion, finding that while the government had suppressed some tapes, the information in those tapes was not material.
 
 
 8
 Anzeulotto brought a Rule 33 motion and a § 2255 motion on June 21, 1995. In both motions, he contended that he was entitled to a new trial because his attorney, Joel Winograd, had suffered from a conflict of interest. Anzeulotto stated that he had discovered that Winograd had given confidential government material to a member of a crime family. Anzeulotto also alleged that Winograd had represented another member of a crime family, Anthony Liberatore, whose son had testified against Anzeulotto in a different proceeding. The district court denied the Rule 33 motion with prejudice as time-barred and dismissed the § 2255 motion without prejudice as premature. These appeals ensued.
 
 1. The Brady Claim
 
 9
 The defendants first contend that the government violated its Brady obligation to turn over any evidence favorable to the defendant that is "material." Brady, 373 U.S. at 87. "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 115 S.Ct. 1555, 1565 (1995) (citations and internal quotation marks omitted). Materiality is a mixed question of law and fact. United States v. Rivalta, 925 F.2d 596, 598 (2d Cir.), cert. denied, 502 U.S. 875 (1991). "While the trial judge's factual conclusions as to the effect of nondisclosure are ordinarily entitled to great weight, we conduct our own independent examination of the record in determining whether the suppressed evidence is material." United States v. Payne, 63 F.3d 1200, 1209 (2d Cir.1995), cert. denied, 116 S.Ct. 1056 (1996) (citations and internal quotation marks omitted).
 
 
 10
 To succeed in a Brady claim, the defendant must show both that the evidence was material and that the government suppressed it. Because we affirm the district court's finding that the tapes were not material, we need not reach the issue of whether the government suppressed the tapes.
 
 
 11
 The defendants insist that three sets of allegedly suppressed evidence were material: (1) a statement by Molini that Grado was not at Stella's pharmacy on June 8, 1992; (2) statements by Molini that the confrontation at the pharmacy had "nothing to do with me [Molini]"; and (3) statements by Molini to Puglisi about the pharmacy incident that omit certain acts of aggression allegedly committed by Anzeulotto.
 
 
 12
 The defendants first contend that the tapes would have shown that Grado was not involved in the events that began at Stella's pharmacy. They support this contention with a statement Molini made to Puglisi on tape: "I shoulda' never even came down. I shoulda' waited. Danny can't wait, Anthony [Grado] wasn't there." However, the defendants neglect to mention that later in the same recorded conversation, Molini stated: "Then [Anzeulotto] says Anthony tell your cousin, tell me where--write [Molini's address] down--write it down on this." While Grado may not have been there for the entire proceedings, the tapes make clear that Grado was present when Anzeulotto threatened Molini. We therefore cannot say that there was a "reasonable probability" that the disclosure of this evidence to the defense would have changed the result of the proceeding.
 
 
 13
 The defendants next contend that Molini's two statements on tape to Puglisi that the pharmacy altercation had nothing to do with him were material. They argue that these statements show that the incident was not precipitated by Anzeulotto's loans to Molini. However, as the district court noted, similar evidence was presented and explained at trial. That evidence was a recording of a June 30, 1992 conversation between Puglisi and Molini in which Molini denied owing Anzeulotto money. Molini admitted at trial, however, that this statement to Puglisi was a lie. The jury therefore already knew that Molini's credibility was questionable, specifically with regard to statements he made to Puglisi about the status of his loan from Anzeulotto. We have held that "a new trial is generally not required ... when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Payne, 63 F.3d at 1210.
 
 
 14
 Finally, the defendants maintain that Molini's account to Puglisi of the pharmacy incident omitted certain details. Molini states on tape that Anzeulotto threw a punch at him, that Molini blocked the punch, and that Anzeulotto then threw a rock through his car window. The defendants argue that this recording impeached his testimony at trial because it did not mention that he was subsequently abducted and threatened with a gun. We reject this claim. The fact that Molini discussed the car incident but not later incidents would not have convinced a reasonable jury that the later incidents did not occur.
 
 
 15
 Because none of the three sets of evidence was material, the defendants' Brady claim is without merit.
 
 2. The Conflict of Interest Claim
 
 16
 Anzeulotto contends that the district court erroneously dismissed his Rule 33 and § 2255 motions alleging that his lawyer labored under a conflict of interest. As an initial matter, we note that in the absence of newly discovered evidence, a Rule 33 motion must be filed within seven days of the verdict. Fed.R.Crim.P. 33. Anzeulotto did not meet this seven-day deadline, and did not request an extension of time based on a late finding of newly discovered evidence. Because the motion was untimely, the district court lacked jurisdiction to entertain it. See United States v. Dukes, 727 F.2d 34, 38 (2d Cir.1984) ("[The] time limits [in Rule 33] are jurisdictional. If a motion is not timely filed, the district court lacks power to consider it."). The Rule 33 motion was therefore properly dismissed.
 
 
 17
 While § 2255 contains no time bar, a defendant generally cannot file a § 2255 petition until a direct appeal has been rejected by this court. Id. at 41. We have, however, entertained § 2255 motions on direct appeal in rare cases where the resolution is clear and a remand would waste judicial resources. See id.; United States v. Aulet, 618 F.2d 182, 186 (2d Cir.1980). Because this is such a case, we consider Anzeulotto's motion as if it were properly filed.
 
 
 18
 The defendant initially maintains that he is entitled to automatic reversal as a procedural matter, because "[w]hen a possible conflict has been entirely ignored, reversal is automatic." United States v. Levy, 25 F.3d 146, 153 (2d Cir.1994). His argument fails because the district court in this case did not ignore the conflict of interest claim. Rather, it correctly found that the Rule 33 motion was barred and the § 2255 motion was premature, and instructed the defendant to re-file the § 2255 motion at a later time. Automatic reversal is therefore not required here.
 
 
 19
 Anzeulotto contends in the alternative that he is entitled to reversal on the merits because Winograd's representation suffered from two conflicts of interest. He first notes that Winograd represented Anthony Liberatore, whose son Christopher Liberatore testified against Anzeulotto in a separate proceeding. Anzeulotto cites a case in which we found that a conflict of interest may exist when a lawyer previously has represented a person who then serves as a key witness against that lawyer's current client. See Ciak v. United States, 59 F.3d 296, 304-05 (2d Cir.1995). Yet the facts of this case do not run afoul of Ciak. While Christopher Liberatore might be considered a key witness, Winograd never represented him. And while Winograd did represent his father, Anthony Liberatore was not a key witness in Anzeulotto's case.
 
 
 20
 The defendant next states that Winograd had a conflict of interest because he gave government tapes to a member of the mob (who was actually an informant). The defendant contends that when that informant turned the tapes over to the government, the government "could have" initiated an investigation and possible criminal proceedings against Winograd. The defendant adduces two cases--Solina v. United States, 709 F.2d 160 (2d Cir.1983) and United States v. Cancilla, 725 F.2d 867 (2d Cir.1984)--for the rule that attorneys suffer a conflict of interest when they have engaged in illicit activity. The defendant fails to recognize, however, that we have twice declined to extend this rule " 'beyond the sort of egregious conduct present in Solina and Cancilla,' " see United States v. Aiello, 900 F.2d 528, 531 (2d Cir.1990) (quoting Waterhouse v. Rodriguez, 848 F.2d 375, 383 (2d Cir.1988)), and that Winograd's conduct in this case is leagues away from the conduct at issue in Solina and Cancilla. The attorney in Solina was not licensed to practice law; the attorney in Cancilla was complicit in the same crime for which his client was on trial. In sharp contrast, the defendant here cannot point to anything more than the possibility that the attorney could be prosecuted. The fact that Winograd supplied a member of the mob with government tapes therefore did not create a conflict sufficient to impugn the verdict.
 
 
 21
 Grado's and Anzeulotto's Brady claim must fail because the allegedly suppressed tapes were not material. Anzeulotto's individual claim is also without merit because his attorney's representation was not tainted by a conflict of interest. We have examined all of the defendants' contentions, and find them to be without merit. The district court's judgment is therefore affirmed.